UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| BLANCA WINTER-DUNCAN, | |
|---|---|
| Plaintiff, | Case No. C11-5650-RAJ-BAT |
| v. | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Blanca Winter-Duncan seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends the ALJ erred by (1) failing to address the opinions of examining doctor Lawrence Moore, Ph.D., (2) incorrectly assessing her residual functional capacity ("RFC"), (3) incorrectly assessing her testimony and the lay testimony, and (4) failing to assess her transferable work skills. Dkt. 17. As relief, Ms. Winter-Duncan requests the Court remand the matter for further proceedings. The Court agrees and recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

Blanca Winter-Duncan is currently 57 years old, has a high school education, has worked

REPORT AND RECOMMENDATION - 1

as a cashier, auditor, food server, and has held other unskilled labor positions.[1] On March 5, 2007, she applied for benefits, alleging disability as of October 6, 2005. Tr. 131. Her application was denied initially and on reconsideration.[2] After conducting a hearing on June 1, 2009, the ALJ issued a decision dated July 10, 2009, finding Ms. Winter-Duncan not disabled.[3] The Appeals Council denied Ms. Winter-Duncan's request for review, making the ALJ's decision the Commissioner's final decision.[4]

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[5] the ALJ found:

**Step one:** Ms. Winter-Duncan had not worked since October 6, 2005.

**Step two:** Ms. Winter Duncan had the following severe impairments: right knee degenerative joint disease, asthma, and obesity.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[6]

**Residual Functional Capacity:** Ms. Winter-Duncan could perform sedentary work as follows: She can walk about one block on a level surface, stand for 30 minutes and sit for one hour. She can lift occasionally not more than ten pounds and not more than five pounds with some frequency although not repetitively. She can climb six stair steps using a handrail. Her use of the hands is average. She is qualified to drive but drives very little. With glasses, her eyesight is functional. She has moderate hearing difficulty, but her hearing is sufficient to carry on a normal conversation. She has mild short term memory loss and mild impairment in the ability to concentrate and maintain a focus of attention. She has a fatigue impairment of an energy level of 85% of a female her age.

**Step four:** Ms. Winter-Duncan could perform her past work.

**Step five:** Alternatively, as there are jobs Ms. Winter-Duncan could perform, she is not disabled.

---

[1] Tr. 26, 59, 131.
[2] Tr. 54, 59.
[3] Tr. 12-22.
[4] Tr. 1-6
[5] 20 C.F.R. §§ 404.1520, 416.920.
[6] 20 C.F.R. Part 404, Subpart P. Appendix 1.

Tr. 12-22.

## DISCUSSION

### A. The ALJ's failure to address Dr. Moore's opinions

Ms. Winter-Duncan argues, and the Court agrees, the ALJ erred by failing to address the opinions of examining doctor Lawrence Moore, Ph.D., regarding Ms. Winter-Duncan's depressive disorder. The Court finds this error was not harmless because it led to the ALJ's failure to find depressive disorder to be a severe impairment at step-two of the disability evaluation process, and the ALJ's failure to consider the disorder in assessing Ms. Winter-Duncan's RFC.

The parties agree an ALJ (1) must explain why significant, probative evidence or uncontroverted medical evidence was rejected; (2) must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently"; and (3) "need not discuss evidence that is not significant or probative."[7] The record shows the ALJ did not mention or discuss Dr. Moore's opinions or whether Ms. Winter-Duncan suffered from a depressive disorder. *See* Tr. 15-22. The Commissioner does not dispute this but argues the ALJ had no obligation to discuss Dr. Moore's opinions because they were not significant or probative.[8] The record does not support this argument.

The record shows Dr. Moore performed a psychological evaluation for the Washington Department of Social and Health Services ("DSHS") on November 10, 2008. Tr. 489. Dr. Moore diagnosed Ms. Winter-Duncan with "Major Depressive Disorder, Single Episode, Severe without Psychotic Features" under "Diagnostic Code (DSM III-R)" 296.23. Tr. 490. He opined

---

[7] *See* Dkt. 17 at 5, Dkt. 18 at 6 (Citing to *Vincent v. Heckler*, 739 F.2d 1393-95, 1395 (9th Cir. 1984), and *Howard ex rel, Wolff v. Barnhart*, 344 F.3d 1006, 1012 (9th Cir. 2003).
[8] Dkt. 18 at 7.

REPORT AND RECOMMENDATION - 3

she had moderate limitations in the ability to understand, follow directions and instructions, to exercise judgment and make decisions, and to maintain appropriate behavior. He also opined she had marked limitations in her ability to relate appropriately with co-workers and supervisors, interact appropriately in public contacts and to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 491. As a basis for these opinions, Dr. Moore stated: "This individual is very depressed. She is not caring for herself as she should and has no motivation or initiative. She becomes anxious when she has to leave the house and has no social contact." *Id.* Dr. Moore estimated these limitations would persist for five to nine months. Tr. 492.

In addition, to these opinions, Dr. Moore prepared a two and half page written addendum. Tr. 493-95. In the addendum, Dr. Moore noted Ms. Winter-Duncan's psychiatric history "reportedly dates back to 1997" and that she began sporadic treatment in 2008 with Columbia River Mental Health Services and Sea Mar Community Health Clinic. Records from Sea Mar indicated Ms. Duncan-Winter was suffering from "depression with anxiety" and that she had problems going out of the house dating back to 2006. Tr. 493. In examining Ms. Winter-Duncan, Dr. Moore noted she reported significant depression for the last two or three years, that she does not "like to see anybody or going anywhere," that she is agitated around others, that she "feels like [she's] waiting to die" and has passive suicidal ideation, and that she feels useless, empty, gains no enjoyment in activities and is tired of everything. Tr. 494. Dr. Moore stated:

> The current evaluation suggests the presence of a major depressive disorder that has been present for the past two or three years and is currently severe in nature. This individual had a difficult time describing her internal experience but does endorse numerous symptoms that appear consistent with the significant mood disturbance. She describes the presence of some underlying anxiety and, indeed, a primary care provider at Sea Mar Clinic suggested the presence of anxiety though there appeared to be no

REPORT AND RECOMMENDATION - 4

> overt symptoms that are not directly attributable to her depression
> and, as such, no separate diagnosis is offered.

Tr. 494. Against this record, the Commissioner's argument that "Dr. Moore opined Plaintiff was experiencing a single episode of depression, not chronic depression" pales. Contrary to this assertion, the record clearly shows in Dr. Moore's opinion, Ms. Winter-Duncan, at the time of examination, was suffering from a major depressive disorder that had been present for two or three years and which was currently severe in nature.

Further, the Commissioner offers no authority for his interpretation that the DSM III-R code, 296.23, Dr. Moore used—Major Depressive Disorder, Single Episode"—defines a single episode and not chronic depression. This is not surprising because under the Diagnostic and Statistical Manual of Disorders ("DSM"), a "single episode" is not a one-time event but is a period of time lasting at least two weeks during which the patient suffers from depressed mood.[9] Further, the DSM defines Major Depressive Disorder as a "clinical course that is characterized by one or more Major Depressive Episodes."[10]

Because Dr. Moore opined Ms. Winter-Duncan suffered from Major Depressive Disorder that had been present two or three years at the time of examination, and that this disorder was severe in nature, causing moderate to severe functional limitations affecting Ms. Winter-Duncan's ability to perform one or more basic work related activities, the ALJ was required to explain why this probative evidence was rejected or was not discussed. *See Vincent v. Heckler*,

---

[9] *See* Diagnostic and Statistical Manual of Mental Disorders, 222 (3rd ed. Revised, Am. Psychiatric Ass'n 1987) ("DSM III-R"); Diagnostic and Statistical Manual of Mental Disorders Diagnostic and Statistical Manual of Mental Disorders, 349 (4th ed. Am. Psychiatric Ass'n 2008) ("DSM IV-TR").

[10] *See* DSM III-R at 229; DSM IV-TR at 345, 369 ("Major Depressive Disorder is characterized by one of more Major Depressive Episodes (i.e., at least 2 weeks of depressed mood or loss of interest, accompanied by at least four additional symptoms of depression.")

739 F.2d at 1395. The ALJ erred in failing to do so.

This error was not harmless because it affected the ALJ's step two determinations. At step-two, a claimant must show two things. First, that she has a medically determinable impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Here, Dr. Moore's diagnosis clearly establishes Ms. Winter-Duncan suffers a medically determinable impairment: major depressive disorder. Second, a claimant must show the impairment is severe. *Id.* at 147. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c), 404.1521(a). An impairment is "not severe" if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Here, Ms. Winter-Duncan has shown her major depressive disorder is severe as Dr. Moore opined the disorder caused moderate to marked functional limitations.

While a claimant has the burden to prove a severe impairment at step-two, the ALJ still has a duty to explain or make factual findings to support her conclusion. Here, the ALJ made no such findings and instead erroneously failed to recognize or discuss Ms. Winter-Duncan's major depressive disorder. Tr. 15. Under these circumstances, the Court cannot assume the ALJ performed a critical analysis in the case and affirm the decision on that basis. The Court can only affirm an ALJ's findings when the ALJ clearly sets forth the factual basis for it and those facts can be found in the record.

Based on the record, Dr. Moore's undisputed opinion establishes Ms. Winter-Duncan suffers from major depressive disorder that causes moderate to marked functional limitations. As discussed above, the ALJ erred in failing to address this opinion and failed at step-two to find major depressive disorder to be a severe impairment without explanation. The ALJ should have

considered the limitations caused by these problems in assessing Ms. Winter-Duncan's residual functional capacity and should have considered Dr. Moore's opinions. In assessing a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments. § 404.1545(a)(2). Because that did not occur here, the Court cannot find the ALJ's errors were harmless.

It may be that after reviewing all the medical evidence regarding Ms. Winter-Duncan's mental health problems, an ALJ may find that she retains the capacity to perform some work. Alternatively, an ALJ might conclude that Ms. Winter-Duncan lacks that capacity. But these determinations are not for the Court to make on review; these determinations are for the ALJ to make after developing and considering the medical record.

Accordingly, the Court concludes matter should be remanded for further proceedings. On remand, the ALJ should, utilizing the five step disability evaluation process, consider Ms. Winter-Duncan's major depressive disorder to be a severe impairment for purposes of step two, evaluate Dr. Moore's opinions as required by the other steps of the disability evaluation process, and develop the medical record regarding Ms. Winter-Duncan's mental health problems as appropriate.

**B.    The ALJ's residual functional analysis**

Ms. Winter-Duncan contends the ALJ erred by failing to include all of her postural and environmental limitations in assessing her RFC. Dkt. 17 at 7. An RFC that fails to take into account a claimant's limitations is erroneous. *Valentine v. Comm'r. of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The Commissioner concedes the ALJ failed to take the postural or environmental limitations into account but argues this error was harmless because the ALJ found Ms. Winter-Duncan was capable of performing jobs, such as cashier auditor and

information or appointment clerk, which take these limitations into account. Dkt. 18 at 8-9.

There are two problems with adopting the Commissioner's position. First, the ALJ gave no reason to reject the limitations and did not ask the vocational expert whether Ms. Winter-Duncan could work as a cashier or clerk with these limitations. As such the Commissioner's argument is an improper post-hoc rationalization that this Court cannot rely on. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). And second, the expert testimony was given on the subject of what jobs Ms. Winter-Duncan could perform. The Court is not in a position to make its own factual findings about jobs, such as cashier auditor and information or appointment clerk, and determine whether or not these jobs, as normally performed, take into account Ms. Winter-Duncan's postural or environmental limitations.

The Court is thus left with a record that shows the ALJ, without explanation, failed to include all of Ms. Winter-Duncan's limitations in her RFC, and that consequently, the ALJ posed a hypothetical questions to the vocational expert that did not reflect all of Ms. Winter-Duncan's limitations. The Court cannot give any weight to the opinion of a vocational expert that is based on a hypothetical question that does not reflect all of a claimant's limitations. *See Bray v. Comm'r. of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citing *Russell v. Sullivan*, 930 F.2d 1443, 1445 (9th Cir. 1991)). As such, on remand, these limitations should be included in the ALJ's assessment of Ms. Winter-Duncan's RFC, and should be included in any hypothetical questions posed to a vocational expert.

Ms. Winter-Duncan also contends the ALJ erred by asking the vocational expert a vague hypothetical question that did not explicitly request the expert to assume Ms. Winter-Duncan could work on a regular and continuous basis, i.e., eight hours a day, five days a week or an equivalent work schedule. Dkt. 17 at 8. This contention is meritless. The record shows the

vocational expert understood she was being asked whether Ms. Winter-Duncan was capable of performing jobs on a regular and continuous basis. This is evidenced by the expert's opinion that Ms. Winter-Duncan could perform, among other jobs, her past relevant work which by definition involves "substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 404.1572, 404.1573; *Lewis v. Apfel*, 236 F. 3d 503, 515 (9th Cir. 2001).

**C.     The ALJ's evaluation of the lay testimony**

Ms. Winter-Duncan's daughter, Wiesje Graham, testified her mother had memory problems, and was uncomfortable about leaving her home and being around people. Tr. 38. The ALJ found "although the lay witness's statements are credible, they are inconsistent with a finding of total disability and I do not consider them in my determination of the claimant's residual functional capacity." Tr. 21.

Lay testimony about a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific, germane reasons for doing so. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons to discount Ms. Graham's testimony falls far short of this standard. Rather than providing a specific and germane reason to reject the testimony, the ALJ rejected the testimony based on nothing more than a conclusory statement—that the testimony was inconsistent with disability.

The Commissioner contends, even with this explanation, the ALJ did not err because an ALJ has no obligation to consider or discuss lay testimony that does not concern how a claimant's impairments affect her ability to work. Dkt. 18 at 11. The argument rests on the Commissioner's contention that because the medical evidence does not support the existence of a mental impairment that was severe for at least 12 months, "Ms. Graham's description of the

REPORT AND RECOMMENDATION - 9

depressive symptoms she observed . . . were not probative." *Id.* But as discussed above this contention is not supported by the record. Contrary to the Commissioner's claims and the ALJ's finding, the record establishes Dr. Moore opined Ms. Winter-Duncan suffered from major depressive disorder that had been present for two or three years prior to Dr. Moore's evaluation and that the disorder caused moderate to marked functional limitations.

In short, the ALJ erred in failing to provide specific and germane reasons to reject Ms. Graham's testimony which was probative of Ms. Winter-Duncan's mental limitations. The ALJ should thus on remand re-evaluate Ms. Granham's testimony, as to Ms. Winter-Duncan's mental health problems.

**D.     The ALJ's evaluation of Ms. Winter-Duncan's credibility**

Ms. Winter-Duncan contends the ALJ erred in finding her statements about her symptoms not fully credible. As the ALJ did not find Ms. Winter-Duncan was malingering, the ALJ was required to provide clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

The ALJ found Ms. Winter-Duncan's medically determinable impairments could reasonably be expected to produce some degree of the symptoms she alleged, but not to the degree of severity Ms. Winter-Duncan claimed. Tr. 19-20. Ms. Winter-Duncan testified to both physical and mental health problems. She described mental health problems such as lack of memory, inability to understand and complete tasks, sleep disorder, inability to tolerate people and always being fatigued. Tr. 19-20. The ALJ's erred in rejecting this testimony as

REPORT AND RECOMMENDATION - 10

inconsistent with the "severity of the claimant's symptoms and limitations due to her impairments" because, as noted above, the ALJ erred in failing to consider or discuss Dr. Moore's opinions about Winter-Duncan's major depressive disorder.[11] Tr. 20.

Ms. Winter-Duncan also described physical problems such as limits to walking, sitting, climbing, pain in her arms, back and knees, knee swelling, difficulties using her hands, need for a cane and shortness of breath. Tr. 19-20. The ALJ rejected this testimony on the grounds the "overall record supports a finding that the claimant is capable of performing sedentary work with the additional limitations set out above. This is supported by the medical opinion of Dr. Thornton" and the "objective medical record." Tr. 21.

Ms. Winter-Duncan argues the ALJ erred because "despite these credibility findings, the ALJ limited Plaintiff to sedentary work." *Id.* The Court rejects this implication as illogical and unsupported. The ALJ properly rejected Ms. Winter-Duncan's allegations of more limited physical symptoms as inconsistent with an unsupported by the medical evidence. The ALJ specifically pointed to the opinion of Dr. Thornton (*id.*) and also discussed the opinions of Dr. Cottrill (Tr. 20) as grounds to discount Ms. Winter-Duncan's testimony. This of course was entirely appropriate because an ALJ may consider the medical evidence when making a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc). An ALJ may consider "ordinary techniques of credibility evaluation" including medical evidence that is inconsistent with the nature, severity, and effect of the symptoms of which claimant complains. *Smolen v. Chater*, 80

---

[11] Ms. Winter-Duncan also argues the ALJ erred by failing to identify exactly which activity she testified having problems performing—housework, cooking meals, caring for pets, shopping—was not credible. Dkt. 17 at 12-13. The Court considers these problems to be inextricably intertwined with Ms. Winter-Duncan's mental health problems, and that Ms. Winter-Duncan's testimony regarding these problems should therefore be reevaluated by the ALJ on remand.

F.3d 1273, 1284 (9th Cir. 1996).

In sum, the ALJ erred in rejecting Ms. Winter-Duncan's testimony regarding symptoms arising from her mental health problems, but did not err in rejecting her testimony as to symptoms related solely to her physical problems. On remand, the ALJ should reevaluate Ms. Winter-Duncan's testimony as to symptoms caused by her mental health problems. The Court, however, does not disturb the ALJ's decision as to Ms. Winter-Duncan's testimony regarding symptoms solely caused solely by her physical problems.

**D.     The ALJ's assessment of Ms. Winter-Duncan's transferrable skills**

Ms. Winter-Duncan argues the ALJ erred in failing to make sufficient findings about whether she possessed transferrable skills to perform the jobs the ALJ found she could perform at step-five. Dkt. 17 at 14. The Commissioner argues, if the ALJ erred, the error was harmless because the ALJ found Ms. Winter-Green could perform her past relevant work at step-four. The Court need not address these arguments here in view of the errors that have been identified above and the Court's recommendation the matter be remanded for further proceedings.

## CONCLUSION

For the foregoing reasons, the Court recommends the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, utilizing the five step disability evaluation process, the ALJ should: (1) consider Ms. Winter-Duncan's major depressive disorder to be a severe impairment for purposes of step two, evaluate Dr. Moore's opinions and develop the medical record regarding her mental health problems as appropriate; (2) reassess the testimony of Ms. Winter-Duncan and Wiesje Graham regarding symptoms related to Ms. Winter-Duncan's mental health problems; (3) reassess Ms. Winter-Duncan's residual functional capacity as necessary; (4) and re-do steps-four and five, as

1 | necessary, with the assistance of a vocational expert if deemed appropriate.
2 |      A proposed order accompanies this Report and Recommendation. Objections to this
3 | Report and Recommendation must be filed and served no later than **May 1, 2012.** If no
4 | objections are filed, the matter will be ready for the Court's consideration on **May 4, 2012**. If
5 | objections are filed, any response is due within 14 days after being served with the objections. A
6 | party filing an objection must note the matter for the Court's consideration 14 days from the date
7 | the objection is filed and served. Objections and responses shall not exceed twelve pages. The
8 | failure to timely object may affect the right to appeal.
9 |      DATED this 17th day of April, 2012.

/s/ Brian A. Tsuchida

BRIAN A. TSUCHIDA
United States Magistrate Judge